IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **BERMAN DE PAZ GONZALEZ.** and **EMERITA MARTINEZ-TORRES** **Individually and as Heirs, and on behalf of THE ESTATE OF BERMAN DE PAZ-MARTINEZ** *Plaintiff* | § § § § § § § | |
| VS. | § § § | NO. _____ |
| **THERESE M. DUANE, M.D., ACCLAIM PHYSICIAN GROUP, INC., TARRANT COUNTY HOSPITAL DISTRICT d/b/a JPS HEALTH NETWORK** *Defendants* | § § § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **BERMAN DE PAZ GONZALEZ and EMERITA MARTINEZ-TORRES, Individually and as Heirs, and on behalf of THE ESTATE OF BERMAN D PAZ-MARTINEZ** hereinafter referred to as Plaintiffs, complaining of **THERESE DUANE, M.D., ACCLAIM PHYSICIAN GROUP, INC., TARRANT COUNTY HOSPITAL DISTRICT d/b/a JPS HEALTH NETWORK,** hereinafter referred to as Defendants, and for cause of action, Plaintiffs would respectfully show the Court and Jury as follows:

I.

Dr. Therese Duane, M.D. is an individual who resides in Tarrant County, Texas. Dr. Duane may be served with citation at her residence, 1101 Wishing Tree Lane, Keller, Texas 76248, or wherever she may be found.

Defendant Acclaim Physician Group, Inc. , is a Texas Corporation who may be served through their registered agent for service, Robert Earley at 1500 S. MAIN STREET FORT WORTH, TX 76104.

Defendant Tarrant County Hospital District d/b/a JPS Health Network is a local governmental entity who may be served at their principal place of business, 1500 South main Street Fort Worth, TX 76104

## II.

## Facts

On March 29th, 2018, Berman DePaz Sr. and his wife found themselves in the John Petersmith Intensive Care Unit in an unthinkable position. Their 21-year-old son Berman De Paz was in grave condition and a ventilator was the only thing keeping him alive. As strong Catholics, the DePaz family believed in miracles and even in the midst of tragedy and the chaotic aftermath which marked the hours following their son's admission to the hospital, retained hope that their son would pull through, recover, and live out the rest of his life as intended. As a Level I trauma center, JPS and their doctors are supposed to provide the highest level of care for patients in the most extreme and serious cases. Caring for and dealing with patients who are in the gravest of conditions is a daily reality for JPS doctors and staff. Informing families of all walks of life and assisting them in making the most critical medical care decisions for loved ones is a part of the job. When parents are faced with making crucial end of life decisions regarding their own children, it is the most important decision they will ever make in their lifetime. It is a caretakers job to assist and aid those parents in that decision by providing them with the all of the information and

emotional support they require to make the absolute best decision, because there are no second chances. When it came to their son, Berman DePaz Sr. and his family weren't even afforded a chance, due to the extreme and unconscionable gross negligence of the Defendants JPS and Acclaim Physician Group physician, Dr. Therese Duane.

On March 29th, 2018, the day of their son's injury, mom and dad knew that their son was in a coma and had suffered a very serious brain injury. Through an interpreter, they had been informed by JPS staff that their son's prognosis was extremely poor. The family came together to pray for a miracle to heal Berman DePaz Jr. Almost immediately after the prayers, their son started making movements for the first time. A day and a half after being admitted in the late afternoon of March 31st, 2018, the family spent 45 minutes with chaplain Ronald Suarez in an attempt to process what they were going through and express their beliefs and wishes about how they wished to proceed. In that conversation, they communicated to Mr. Suarez that they strongly believe in miracles, saw their son make movements in response to prayer, absolutely do not wish to stop treatment at this time, and expressed a need for more time. From communicating with the staff, the family was told that they would allow him to stay for 7 days, their son would be released to go home with the necessary equipment to keep him alive. At 10 p.m. the family, except for his dad, headed home to rest.

At 6 a.m. the next morning, a doctor by the name of Therese Duane appeared unexpectedly in the room with an interpreting nurse stating that they had an order to disconnect his son from life support. Shocked, unnerved, and panicked, Mr. DePaz Sr. asked her what had happened to the plan to release him home after 7 days, and Dr. Duane stated that the doctors had gotten together and decided to take him off life support. Without

allowing him to even speak with his family or giving his family a chance to return to the hospital, without his consent and right in front of him, Dr. Duane disconnected his son from life support as he helplessly watched his son die.

Under the Texas Advanced Directive Act, Dr. Duane's actions were in direct violation of the following statutes:

-Texas Health and Safety Code Chapter 166.039, outlining the specific procedure in which parents are authorized to make treatment decisions on behalf of patients based on their known desires and the decision must be properly explained, documented, and examined by the medical ethics committee of the hospital in the event of a disagreement.

- Texas Health and Safety Code Chapter 166.040, describing that before withholding or withdrawing life-sustaining treatment from a qualified patient under this subchapter, the attending physician must determine that the steps proposed be taken are in accord with the Texas Advanced Directive Act and the patient's existing desires.

-Texas Health and Safety Code Chapter 166.044, outlining that a physician or health professional must exhibit "reasonable care" in determining whether or not to withdraw life-sustaining procedures, and that the standard of care that a physician, health care facility, or health care professional shall exercise under this section is that degree of care that a physician, health care facility, or health care professional, as applicable, of ordinary prudence and skill would have exercised under the same or similar circumstances in the same or a similar community.

-Texas Health and Safety Code Chapter 166.045, which states that life sustaining care should be provided to a patient until a reasonable opportunity has been afforded for the

transfer of a patient to another physician or healthcare facility if the treatment decision of the family is contrary to the physician's (or the medical ethics committee)
-Texas Health and Safety Code Chapter 166.046, that if a physician and/or a medical ethics committee chooses not to effectuate a directive or a treatment decision, the person responsible for the health care decisions of the patient may be given a written description of the review process, shall be informed of the review process not less than 48 hours before the meeting, shall be provided with a copy of possible transfer options and referral groups, a copy of the patient's medical file for 30 days (including the written explanation for the decision). Further, the patient should be provided life-sustaining treatment pending transfer for at least 10 days.

If Dr. Duane's complete and utter failure to act within the guidelines specifically enumerated in the Texas Advanced Directive Act weren't egregious enough, the motive and method driving Dr. Duane's actions are even more sickening. She chose victims who didn't speak English, weren't insured, and at least one patient (believed to be Berman De Paz Jr. who she (mistakenly) thought was undocumented.

On July 11th, 2018 a political advocacy group in the DFW area called Direct Action Texas published a piece entitled "Does JPS have a plug-pulling problem?" which alleged that a medical director at JPS had been making decisions to end life sustaining treatment of patients in violation of the Texas Advanced Directive Act. In response to the article, an anonymous JPS surgical resident emailed the author of the article naming Dr. Therese Duane. The resident explains that on three different occasions, Dr. Duane chose to withdraw care without appropriate discussions or consent, choosing patients who were uninsured and lacked the resources to seek justice, leading to multiple nurses to report her

actions to JPS CEO Robert Early. As described by the resident, her actions are "beyond reprehensible" and the residents were forced into the incomprehensible position of protecting patients from their own doctor. **See Exhibit A.**

IV.

## CAUSES OF ACTION AGAINST DEFENDANTS

Incorporating all allegations as set forth above, Plaintiff alleges the following. Defendants are healthcare providers licensed by the State of Texas. The injuries caused by the misconduct of Defendants occurred while Defendants' agents and employees were within the regular scope of their employment by Defendants. Plaintiff specifically pleads the doctrine of respondeat superior. Defendants may be held liable for the negligent acts of its agents/employees committed during the regular course and scope of their agency/employment even if the employer did not personally commit a wrong.

Defendants owed the DePaz family a duty of care to exercise that degree of care required that a reasonable hospital under the same or similar circumstances would. In doing so, the Defendants were required to consider the wishes of the family before discontinuing life sustaining treatment. The Texas Advanced Directives Act specifically codifies the procedure to be followed when the family of a patient disagrees with hospital's choice to discontinue life sustaining treatment. These Defendants breached this duty of care by the acts and omissions of negligence of Defendants and their agents, employees and representatives, including the following:

    a. In failing to adequately supervise their own employees/doctors to ensure that they are following proper procedures in discontinuing life sustaining care

b. In failing to properly train their employees/doctors on how to follow correct procedure in discontinuing life sustaining treatment

c. Failing to follow the procedure codified in the Texas Advanced Directives Act, more specifically: Texas Health and Safety Code Chapter 166.039, 166.040, 166.044, 166.045, 166.046

Furthermore, the failure to adhere to the Texas Advanced Directive Act was a direct violation of Mr. DePaz' due process rights under the 14th amendment of the United States Constitution.

Because Dr. Duane was a person with final decision making authority, the hospital employees/doctors were not adequately trained, and the practice of ignoring the laws concerning withholding life sustaining treatment had been widespread, the actions as described above violate 42 U.S.C. §1983.

Based upon Defendants' failure to meet the standard of care as described herein, Plaintiffs would show that Defendants' negligent and otherwise tortious conduct was a proximate cause of damages suffered by the Plaintiffs. Plaintiffs further allege that Defendant had actual subjective awareness of their acts and omissions which led to Mr. DePaz' untimely death without in violation of his due process rights and Plaintiff specifically pleads gross negligence.

As a proximate result of the negligence and gross negligence as above described, Plaintiff, **BERMAN DEPAZ** and his family sustained personal injuries, all of which have caused them in the past, and will cause them in the future, physical pain, mental anguish,

physical impairment, and medical and hospital expenses, for which she should be compensated in accordance with the laws of the State of Texas.

V.

## CONDITION PRECEDENT

Plaintiffs would show that they have complied with the provisions set forth in Section 74.051 of the Civil Practice and Remedies Code, in that Defendants have been notified of Plaintiff's claim(s) prior to the filing of this lawsuit.

VI.

## CLAIM FOR WRONGFUL DEATH SURVIVOR DAMAGES TO PLAINTIFFS

Plaintiffs' injuries were proximately caused by the grossly negligent and negligent acts or omissions of Defendants. Accordingly, Plaintiffs hereby sue for survivor and wrongful death damages pursuant to the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code Section 71.001, et. seq. for loss of love, affection, comfort, society and counsel, which exceed the minimum jurisdictional limits of this Court.

VII.

## DISCOVERY PROPOUNDED TO DEFENDANT

Plaintiff hereby propounds the following discovery to Defendant along with the service of this petition:

1) Plaintiff's Request for Disclosure to Defendant

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final hearing hereof, Plaintiffs have judgment against Defendant for all damages to which they are entitled under the Federal law and under the laws of the State of Texas, which amount exceeds the minimum jurisdictional limits of this Court; for pre-judgment interest in accordance with the law; for interest on the judgment; cost of suit; and for such other and further relief, either at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

**STRECK AND DAVIS LAW**
555 S. Summit
Fort Worth, Texas 76104
(817) 332-3117
(817) 549-8898 FAX


**JACKSON DAVIS**
State Bar No. 24068540
jackson.davis@streckdavislaw.com

ATTORNEYS FOR PLAINTIFF

# **EXHIBIT A**





Christine Welborn

Direct Action Texas
(682) 626-5679
christine@directactiontx.com

Begin forwarded message:

**Subject: Does JPS Have a Plug-Pulling Problem?**
**Date:** July 12, 2018 at 9:46:00 AM CDT
**To:** "info@directactiontx.com" <info@directactiontx.com>

To whom it concerns,

Regarding this story:
1) The provider's name is Therese Duane. She was the Chair of the Department of Surgery. She should be named
2) She wasn't involved in inappropriate withdrawal of care of 10 patients. That is not accurate. There were however three patients during that month that she withdrew care on without appropriate discussions with family or consent. The patients were uninsured and I believe at least one was an undocumented immigrant. I doubt their families have the resources to seek justice. What she did is beyond reprehensible. There were other questionable instances in the months preceding. She seemed to have become more reckless which prompted the ICU nurses to go to Robert Early
3) She had multiple, repeated bad outcomes in the operating room. The surgical residents had been protecting patients from her since she arrived in fort worth. She would not infrequently attempt to begin surgical procedures on her own while the surgical residents were involved in another procedure or care for a patient in the emergency room. The nurses knew to call us repeatedly if and when she did that because she was dangerous. For example, she performed below the knee amputations so incorrectly that they would later need to be revised to an above the knee amputation. This was purely a technical misjudgment on her part that resulted in patients receiving a much more morbid amputation which would make it considerably more difficult for them to be ambulatory with a prosthesis. This is just one example of many.
4) Her agreement with the hospital was that she was dismissed in lieu of a formal complaint being placed to the Texas Medical Board. Without a formal complaint she is now free to seek to practice elsewhere and be dangerous elsewhere. The hospital is complicit in any further malpractice she performs elsewhere by sweeping it under the rug. I myself have tried to report it but it is difficult to do so anonymously.

Anonymous Surgical Resident