

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BERMAN DE PAZ GONZALEZ AND        §
EMERITA MARTINEZ-TORRES,          §
INDIVIDUALLY AND AS HEIRS,        §
AND ON BEHALF OF THE ESTATE OF    §
BERMAN DE PAZ-MARTINEZ,           §
                                  §
          Plaintiffs,             §
                                  §
VS.                               §   NO. 4:20-CV-072-A
                                  §
THERESA M. DUANE, M.D., ET AL.,   §
                                  §
          Defendants.             §

MEMORANDUM OPINION & ORDER

Came on for consideration the motion by defendant Tarrant
County Hospital District d/b/a JPS Health Network ("JPS") to
dismiss. Doc.[1] 18. Having considered the motion and brief in
support, the response by plaintiffs, Berman De Paz Gonzalez ("De
Paz Gonzalez, Sr.") and Emerita Martinez-Torres, the record, and
the relevant legal authorities, the court finds that such motion
should be granted.

I.

Factual Background

Accepting the allegations in the complaint as true,
plaintiff's twenty-one-year-old son, Berman De Paz, Jr., ("De
Paz, Jr.") sustained a serious brain injury that left him in a

---

[1] The "Doc. __" reference is to the number of the item on the docket in the above-captioned action.

coma.  Doc. 1 at 3.  He was taken to JPS Hospital for life-sustaining treatment, where staff informed plaintiffs that their son's prognosis was extremely poor.  Id.  Plaintiffs did not desire to cease the life-sustaining treatment because they believed in miracles and that their son made movements in response to prayer.  Id.  Staff at the hospital informed plaintiffs that their son could stay for seven days and then be released to go home with the necessary equipment to keep him alive.  Id.  A few days after their son's admission to the hospital, Therese Duane ("Duane"), a physician, informed De Paz Gonzalez, Sr., that the doctors decided to take his son off life support.  Id.  Without the consent of plaintiffs, Duane disconnected De Paz, Jr., from life support, and he died.  Id. at 4.

II.

## Procedural History

On January 28, 2020, plaintiffs sued JPS, Duane, and Acclaim Physician Group, Inc., ("Acclaim") for negligence, gross negligence, and, pursuant to 42 U.S.C. § 1983, violations of the Fourteenth Amendment's Due Process Clause.  Id. at 6-8.[2] Plaintiffs brought such claims individually, as heirs, and on

---

[2] The complaint does not specify whether each claim is asserted against each defendant.

2

behalf of their son's estate.  Id. at 1.  On February 11, 2020,
plaintiffs filed a notice of dismissal of their claims on behalf
of the estate, Doc. 9, and the court entered final judgment as
to those claims, Doc. 10.  On April 24, 2020, JPS filed its
motion to dismiss and brief in support.  Doc. 18; Doc. 19.  On
May 15, 2020, plaintiffs filed their response.  Doc. 25.  On May
16, 2020, the court granted a motion to dismiss filed by Duane
and Acclaim and entered final judgment as to those defendants.
Doc. 27; Doc. 28.  JPS is the sole remaining defendant.

III.

## Grounds of the Motion to Dismiss

JPS asserts that plaintiffs' negligence and gross
negligence claims should be dismissed for a lack of subject
matter jurisdiction because it enjoys sovereign immunity from
liability.  Doc. 19 at 9-15.  JPS also argues that the § 1983
claims should be dismissed for failure to state a claim upon
which relief may be granted.  Id. at 15-26.

IV.

## Applicable Legal Principles

A.   Subject Matter Jurisdiction

The plaintiff bears the burden of proof regarding
jurisdiction at all stages of litigation.  Menchaca v. Chrysler
Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).  A district

3

court has the power to dismiss for a lack of subject matter
jurisdiction and may make its determination "on any one of three
separate bases: (1) the complaint alone; (2) the complaint
supplemented by undisputed facts evidenced in the record; or (3)
the complaint supplemented by undisputed facts plus the court's
resolution of disputed facts." Barrera-Montenegro v. United
States, 74 F.3d 657, 659 (5th Cir. 1996). "Sovereign immunity
deprives the court of subject matter jurisdiction." Walker v.
Beaumont Indep. Sch. Dist., 938 F.3d 724, 734 (5th Cir. 2019).

B.   Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks and ellipsis omitted). Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a
cause of action. Id. at 555 & n.3. Thus, while a court must
accept all of the factual allegations in the complaint as true,

4

it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).

V.

Analysis

A.   The state tort claims should be dismissed for lack of
     subject matter jurisdiction.

JPS argues that the negligence and gross negligence claims
should be dismissed for lack of subject matter jurisdiction.
Doc. 19 at 9-15. The court agrees.

The complaint states that JPS is liable for negligence and
gross negligence (I) because Duane breached a duty to follow the
procedures contained in the Texas Advanced Directive Act before
discontinuing life sustaining treatment and (II) because JPS
failed to adequately supervise and train its doctors to ensure
they followed the act's procedures.  Doc. 1 at 6-7 (citing Tex.
Health & Safety Code §§ 166.039, 166.040, 166.044, 166.045,
166.046).  The Texas Advanced Directive Act states that if a
patient has not executed an advanced directive, is incapable of
communication, and does not have a legal guardian or an agent
under a medical power of attorney, the attending physician and
one other person, including the patient's parent, may make the
decision to withdraw life support.  Tex. Health & Safety Code §
166.039(a)-(b).  Further, if an attending physician refuses to
honor a decision made on behalf of such a patient, either (I)
the physician's refusal must be approved by an ethics or medical

6

committee, id. at § 166.046(a), or (II) life support must be
provided until a reasonable opportunity has been afforded for
the transfer of the patient to another healthcare facility
willing to comply with the decision, id. at § 166.045(c).

However, under the Texas doctrine of sovereign immunity, a
government entity cannot be held liable for the negligence of
its officers or agents unless a constitutional or statutory
provision waives its sovereign immunity in clear and unambiguous
language. See Duhart v. State, 610 S.W.2d 740, 741 (Tex. 1980)
(citing Lowe v. Tex. Tech Univ., 540 S.W.2d 297 (Tex. 1976)).
There is no dispute that as a political subdivision of the State
of Texas, JPS is a government entity entitled to sovereign
immunity. Martinez v. Val Verde Cty. Hosp. Dist., 140 S.W.3d
370, 371 (Tex. 2004) (hospital districts are entitled to
sovereign immunity). Instead, plaintiffs argue that JPS's
immunity has been waived. Doc. 25 at 4-9.

Because this action involves tort claims brought against a
governmental entity, the Texas Tort Claims Act ("TTCA") applies.
The TTCA waives sovereign immunity in certain contexts. Tex.
Civ. Prac. & Rem. Code § 101.025(a) ("Sovereign immunity to suit
is waived and abolished to the extent of liability created by
this chapter."). Plaintiffs fail to address waiver of sovereign
immunity in their complaint but do in their response to the

7

motion to dismiss.  See Doc. 1; Doc. 25 at 7-15.  Plaintiffs
argue that the applicable provision of the TTCA states that a
government defendant is liable for "personal injury and death so
caused by a condition or use of tangible . . . property if the
governmental unit would, were it a private person, be liable to
the claimant according to Texas law."  Doc. 25 at 7 (citing Tex.
Civ. Prac. & Rem. Code § 101.021(2).  The court finds that this
provision does not apply to the facts of this action and that
plaintiffs failed to establish waiver of sovereign immunity.

When the alleged negligence does not relate to the use of
tangible property, but instead to the thought process that led
to the decision to use it, the waiver found in the TTCA's
"tangible property" provision does not apply.  Tex. Tech Univ.
Health Sci. Center v. Jackson, 354 S.W.3d 879, 886 (Tex. App.—El
Paso 2011) (finding no waiver of sovereign immunity because the
negligence related to the judgment the doctor used to decide how
to treat plaintiff's injured eye and not to how the doctor
applied the "bandage contact" or a condition of the contact).

For example, in Arnold v. University of Texas Southwestern
Medical Center at Dallas, a doctor's negligent use of medical
information led him to use implants which were the wrong size
during a breast augmentation surgery, which caused a deformity.
279 S.W.3d 464, 466-67 (Tex. App.-Dallas 2009).  The patient

8

sued the doctor and his employer "for failure to make proper pre-surgery investigations and arrangements." Id. No waiver took place because although the doctor physically handled the implants, his negligence related to his decision-making process before the surgery and not to a negligent handling or application of the property. Id. at 470 ("Because the true substance of the Arnolds' pleadings is that Dr. Chao miscalculated or misdiagnosed the necessary size of replacement breast implants, the fact that the pleadings also identify a piece of tangible personal property used during the procedure does not affect our decision that this is not a claim for the negligent use of tangible personal property.").

A ventilator, like the one used to keep plaintiffs' son alive, constitutes tangible property. However, like in Arnold, the alleged negligence in this action relates to the manner in which a medical decision was made - the decision to withdraw life support without following the procedures mandated by the Texas Advance Directive Act - and not to the manner in which the tangible property was used. Consequently, plaintiffs failed to show that JPS's sovereign immunity has been waived, and the tort claims asserted against JPS should be dismissed.

JPS argues that even if the withdrawal of life support constituted a "use" under the TTCA, waiver would still not occur

9

because Duane was an independent contractor and not an employee
of JPS. Doc. 19 at 11-12. The court agrees. The TTCA only
waives sovereign immunity when the injury is proximately caused
by an employee's, and not an independent contractor's, acts or
omissions within the scope of the employment. Tex. A&M Univ. v.
Bishop, 156 S.W.3d 580, 584-85 (Tex. 2005); Dumas v. Muenster
Hosp. Dist., 859 S.W.2d 648, 650 (Tex. App.—Fort Worth 1993).
JPS establishes that Duane was employed by Acclaim and worked at
JPS as an independent contractor, and plaintiffs do not dispute
Duane's status as an independent contractor. Doc. 19 at 11-12;
Doc. 25 at 5-7.

Instead, plaintiffs make misstatements of law to argue that
waiver under the TTCA is possible despite Duane's independent
contractor status. First, plaintiffs incorrectly state that
"the Dumas court does not hold strictly that only governmental
employees can engage in actionable conduct to waive immunity."
Compare Doc. 25 at 5 with Dumas, 859 S.W.2d at 650 ("Section
101.021 provides that for a governmental entity to be liable for
the personal injury or death of an individual that it can only
be through the acts of its employees."). Second, plaintiffs
incorrectly state that "[t]he Texas Supreme Court has held [in
Bishop] that the actions of independent contractors can serve to
waive immunity for a governmental unit depending on their right

10

of control." <u>Compare</u> Doc. 25 at 6-7 <u>with</u> <u>Bishop</u>, 156 S.W.3d at
585 (holding that defendant workers were independent contractors
and that "[a]ccordingly, their actions could not constitute a
'use' that would waive TAMU's immunity"). Consequently, even if
the removal of life support was a "use" of tangible property,
that use was not an act by an employee of JPS, and JPS's
sovereign immunity was not waived.

B.   <u>The § 1983 claims should be dismissed for failure to state</u>
     <u>a claim upon which relief may be granted.</u>

     JPS also argues that the § 1983 claims should be dismissed
for failure to state a claim for which relief may be granted.
Doc. 19 at 15-26. The court agrees.

     To state a claim against a unit of government under § 1983,
a plaintiff must allege: "a policymaker; an official policy; and
a violation of constitutional rights whose 'moving force' is the
policy or custom." <u>Cox v. City of Dallas</u>, 430 F.3d 734, 748
(5th Cir. 2005) (internal citations omitted). Such allegations
may not be conclusory; they must contain specific facts. <u>Iqbal</u>,
556 U.S. at 679; <u>Pena v. City of Rio Grande City</u>, 879 F.3d 613,
622 (5th Cir. 2018).

     The complaint does not explain how plaintiffs'
constitutional rights were violated. Instead, it merely states,
"the failure to adhere to the Texas Advanced Directive Act was a

direct violation of Mr. DePaz' [sic] due process rights under the 14th amendment of the United States Constitution." Doc. 1 at 7. In their response, plaintiffs clarify that this language refers to the deprivation of plaintiffs' son's life by movants without the due process outlined in the Texas Advanced Directive Act. Doc. 25 at 13. However, to state a § 1983 claim, plaintiffs must plead that their own rights were violated and may not claim their son's injury as their own. See, e.g., Morgan v. City of New York, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001); Burrow by and through Burrow v. Postville Cmty. Sch. Dist., 929 F. Supp. 1193, 1208 (N.D. Iowa 1996). Plaintiffs might well have alleged facts to support a state law claim for emotional distress, but the legal authorities would indicate that damages of that sort will not support a claim based on an alleged violation of the United States Constitution. Id. Because plaintiffs failed to allege that their constitutional rights were violated, they have failed to state a claim for relief against JPS under § 1983, and such claims must be dismissed.

12

VI.

Order

Therefore,

The court ORDERS that the motion be, and is hereby, granted.

The court further ORDERS that the state tort claims and causes of action brought by plaintiffs against JPS be, and are hereby, dismissed for lack of subject matter jurisdiction, and that the § 1983 claims and causes of action asserted by plaintiffs against JPS be, and are hereby, dismissed with prejudice.

SIGNED May 19, 2020.

JOHN McBRYDE
United States District Judge

13