U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 1 8 2021

CLERK, U.S. DISTRICT COURT

By_____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BERMAN DE PAZ GONZALEZ AND | § | |
| EMERITA MARTINEZ-TORRES, | § | |
| INDIVIDUALLY AND AS HEIRS, | § | |
| AND ON BEHALF OF THE ESTATE OF | § | |
| BERMAN DE PAZ-MARTINEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:20-CV-072-A |
| | § | |
| THERESA M. DUANE, M.D., ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motions of defendants,
Tarrant County Hospital District ("JPS"), Therese M. Duane, M.D.
("Duane"), and Acclaim Physician Group, Inc. ("Acclaim"), to
dismiss. The court, having considered the motions, the response
of plaintiffs, Berman De Paz Gonzalez and Emerita Martinez-
Torres, individually and as heirs of Berman De Paz-Martinez, the
replies, the record, and applicable authorities, finds that the
motions of JPS and Acclaim should be granted and that Duane's
motion should be granted in part and otherwise denied.

I.

## Background and Plaintiffs' Claims

On January 28, 2020, plaintiffs filed their original complaint in this action. Doc.[1] 1. Plaintiffs are the father and mother of Berman De Paz-Martinez ("Berman"). They initially brought claims on behalf of Berman's estate, but filed a notice of dismissal, Doc. 9, in response to the court's order to provide proof of authority to proceed in that capacity. Doc. 5. The court dismissed the claims on behalf of the estate without prejudice, making the judgment final. Doc. 11.

Defendants filed motions to dismiss the complaint, Docs. 16, 18, which the court granted. Docs. 27, 28, 29, 30. Plaintiffs appealed. Doc. 31. The United States Court of Appeals for the Fifth Circuit vacated and remanded, holding that "Plaintiffs have a cause of action against Defendants and standing to bring their § 1983 claims."[2] Doc. 36 at 7. The Court declined to address in the first instance other issues regarding the § 1983 claims that had been raised in the motions to dismiss. Id.

---

[1] The "Doc. ___" reference is to the number of the item on the docket in this civil action.
[2] Plaintiffs did not appeal the dismissal of their state law claims. Doc. 36 at 3, n.2.

On remand, the parties agreed that plaintiffs could file an amended complaint, Doc. 45, which they have done. Doc. 46. In it, they allege:

On March 29, 2018, Berman, age 21, suffered a very serious brain injury, was in a coma in grave condition, and was kept alive by a ventilator at John Peter Smith Hospital. Doc. 46, ¶¶ 13, 16, 18. Plaintiffs were informed through an interpreter that their son's prognosis was extremely poor. Id. ¶ 18. The family came together to pray for a miracle and almost immediately, Berman started making movements for the first time. Id. On March 31, 2018, the family spent 45 minutes with a chaplain, telling him that they believed in miracles, saw their son make movements in response to prayer, absolutely did not wish to stop treatment, and needed more time. Id. ¶ 19. Staff told the family that Berman could stay for seven days, at which time he would be released to go home with the necessary medical equipment to keep him alive. Id. ¶ 20. At 6:00 a.m. the next morning, Duane appeared with an interpreter and told Berman's father that the doctors had gotten together and decided to take Berman off life support. Id. ¶ 21. Duane disconnected Berman and his father watched him die. Id. ¶ 22.

Plaintiffs allege that the Texas Advanced Directives Act, Tex. Health & Safety Code §§ 166.001-.166, ("TADA"), provides

3

the only process for effectuating removal of life support from patients, and that defendants violated their constitutional rights by failing to comply therewith.[3]

In support of their claims against JPS and Acclaim, plaintiffs cite to a July 11, 2018 article by a political advocacy group called Direct Action Texas entitled, "Does JPS Have a Plug-Pulling Problem?" Doc. 46, Ex. A. According to the article, an unnamed medical director at JPS had allegedly been pulling the plug on patients she deemed worthy of death. "This doctor is allegedly [skipping the legal steps] and taking upon herself to make the final decision to pull the plug." Id. The original unnamed source claimed that the doctor had illegally terminated as many as ten patients in March alone. According to the article, JPS's CEO denied the incidents and it was unclear how much the board of managers knew. Id. Plaintiffs also rely on an anonymous email from a purported surgical resident, who claimed that there were only three patients for whom Duane withdrew care and it was only when Duane became more reckless that nurses went to the CEO to complain. Doc. 46, Ex. B. The anonymous source claimed that pursuant to an agreement with JPS,

---

[3] Plaintiffs assert that Berman's constitutional rights were violated and purport to seek damages as a result. Doc. 46, ¶¶ 49, 51. However, they admit that the claims brought on behalf of Berman's Estate were voluntarily dismissed and are not being reasserted. Id. at 1, n.1.

Duane was dismissed in lieu of a formal complaint to the Texas Medical Board. Id.

## II.

### Grounds of the Motions

Defendants make several different arguments in support of their motions, but basically urge that: (1) the Fourteenth Amendment does not provide a constitutional right to medical care; (2) violation of TADA does not give rise to a claim under § 1983; and, (3) plaintiffs have failed to plead an official policy or custom so as to give rise to liability on the part of Acclaim and JPS.

## III.

### Applicable Legal Standards

A.   Pleading Generally

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the

"showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

As the Fifth Circuit has explained: "Where the complaint is

6

devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." Anderson v. U.S. Dep't of Housing & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008). In sum, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." Id. at 528-29. Further, the complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8(a). Iqbal, 556 U.S. at 676; Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999); see also Searcy v. Knight (In re Am. Int'l Refinery), 402 B.R. 728, 738 (Bankr. W.D. La. 2008).

B.   Pleading Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and that a person acting under color of state law violated that right. West v. Atkins, 487 U.S. 42, 48 (1988); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 2004).

7

The law is clearly established that the doctrine of respondent superior does not apply to § 1983 actions.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). Liability may be imposed against a governmental body only if that body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Monell, 436 U.S. at 691. Specifically, there must be an affirmative link between the policy and the particular constitutional violation alleged. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a municipal policymaker. Tuttle, 471 U.S. at 823-24. (If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the

8

requisite fault and the causal connection between the policy and the constitutional deprivation. Id. at 824.) Thus, to establish municipal liability requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

9

The general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992); McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989); Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

IV.

Analysis

The law is clear that a person like Berman, who is not incarcerated or otherwise in custody of defendants, does not have a constitutional right to medical care. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S.189, 196 (1989); Harris v. McRae, 448 U.S. 297, 317 (1980). Specifically, the Constitution "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney, 489 U.S. at 196. See Johnson ex rel. Johnson v. Thompson, 971 F.2d 1487, 1495-96 (10th Cir. 1992)(that plaintiffs received some treatment did not entitle them to further treatment). Thus, defendants argue, there is no constitutional right to be kept alive artificially. The question is not, however, whether Berman was entitled to continuing care, but whether, having intubated him,

10

defendants could extubate him without prior notice and an opportunity to respond.

None of the cases cited by the parties appears to discuss this question, at least not in detail. The case closest on point, Reynolds v. Parkland Mem. Hosp., No. 3:12-CV-4571-N-BN, 2012 WL 7153849 (N.D. Tex. Dec. 28, 2012), adopted, 2013 WL 607152 (N.D. Tex. Feb. 19, 2013), holds that plaintiffs in a case like this do not have a cause of action under section 1983. In Reynolds, doctors at Parkland Hospital, a governmental entity like District, "refused to meet with Reynolds' family, made the decision to withhold life support without consulting the family, and made 'inappropriate' medical decisions that resulted in his death." 2012 WL 7153849, at *1. The court held that without a special relationship, Parkland and its employees had no constitutional duty to protect Reynolds and the question of any deliberate indifference was "simply immaterial." Id. at *3. Reynolds was not appealed and does not appear to have been cited by any other court.

In this case, the Fifth Circuit has recognized a cause of action under § 1983, to wit: "Plaintiffs have a cause of action against Defendants." Doc. 36 at 7. It may be that the Court was persuaded (or simply assumed) that the creation of artificial life came with a correspondent right to due process. Whatever

11

the case, the Court did not go further, but indicated that other
issues raised by defendants in their motions to dismiss might
have merit. Id. Accordingly, the court considers those issues,
beginning with whether a violation of state procedure amounts to
a constitutional deprivation.

Plaintiffs allege that defendants' violation of TADA
amounted to a denial of due process. The law in the Fifth
Circuit is that a violation of state law does not constitute a
constitutional violation or a violation of federal law. Woodard
v. Andrus, 419 F.3d 348, 353 (5th Cir. 2005); Reynolds, 2012 WL
7153849 at *4. In particular, a state's failure to follow its
own procedural regulations does not establish a violation of due
process.[4] Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995). See
Daniels v. Williams, 474 U.S. 327, 332-33 (1986)(noting that the
Fourteenth Amendment is not a font of tort law to be
superimposed upon whatever systems may already be administered
by the states and that just because an actor may be a state
official does not mean that his act becomes a constitutional
violation). To the extent plaintiffs assert claims arising out

---

[4] The local state court of appeals has recognized that the operative section of the TADA provides a set of procedures by which an attending physician may obtain immunity from civil liability and criminal prosecution for a decision to unilaterally discontinue life-sustaining treatment. T.L. v. Cook Children's Med. Ctr., 607 S.W.3d 9, 24 (Tex. App.—Fort Worth 2020, pet. denied).

of the alleged violation of TADA, those are not claims under § 1983.

As for JPS and Acclaim, plaintiffs have not pleaded sufficient facts to show plausible claims against them. Governmental liability cannot be based on respondeat superior, which is really what plaintiffs are trying to do. See Doc. 54 at 19-21 (arguing that Duane was a vice-principal of Acclaim, hence its liability). Plaintiffs argue that Duane's title or alleged status somehow makes her a policymaker on behalf of JPS and Acclaim. Id. at 18-19 (citing Doc. 46, ¶ 42). But as one of the cases they rely upon says, the title of the employee is not dispositive. Hammerly Oakes, Inc. v. Edwards, 958 S.W.2d 387, 391 (Tex. 1997). As JPS points out, its final policymaker is its board of managers. Tex. Health & Safety Code § 281.047. Its medical executive committee adopts policies relating to medical decision-making. Tex. Health & Safety Code § 281.0286(e) & (f). Plaintiffs have not pleaded facts to show that Duane was a policymaker for either entity.[5] Rather, the exhibits to the amended complaint indicate that Duane was a rogue employee who was neither making nor following policy. Doc. 46, Exs. A & B.

---

[5] Plaintiffs overlook the fundamental difference between final decision-making authority and final policymaking authority. See Bolton v. City of Dallas, 541 F.3d 545, 548-50 (5th Cir. 2008)(finality of an employee's action does not automatically lend it the character of a policy).

Plaintiffs argue that even if Duane was not a policymaker for JPS and Acclaim, they would still be liable because plaintiffs have alleged that the policies of each were the moving forces in the constitutional violations. Doc. 54 at 21-25. Plaintiffs overlook that they must still identify policymakers for JPS and Acclaim, which they have not done.[6] Bennett, 735 F.2d at 862. Further, they have not identified an unconstitutional policy or custom that caused the deprivation of a constitutional right. Merely speculating and making conclusory allegations that a policy existed is not enough.[7] Pena v. City of Rio Grande City, 879 F.3d 613, 622 (5th Cir. 2018); Turner v. Lieutenant Driver, 848 F.3d 678, 685 (5th Cir. 2017). The policy or custom must have been adopted or maintained with objective deliberate indifference. Scott v. Moore, 114 F.3d 51, 54 (5th Cir. 1997). Failure to adopt a policy only counts if it amounts to an intentional choice and not merely an unintentional negligent oversight; that is, the failure to adopt a policy must be deliberately indifferent. Rhyne v. Henderson Cnty., 973 F.2d 386, 392 (5th Cir. 1992).

---

[6] Plaintiffs do not specify any acts of JPS and Acclaim individually. See Iqbal, 556 U.S. at 676.

[7] Again, the exhibits upon which plaintiffs rely indicate that Duane "took it upon herself" to make final decisions, that it was unclear how much the board of managers of JPS knew, that nurses went to the CEO of JPS at some unspecified time after Duane became more reckless, and that Duane was dismissed. Doc. 46, Exs. A & B. Plaintiffs have not alleged facts from which it could be concluded that JPS and Acclaim condoned what Duane did, much less that there was a policy that was the moving force behind her alleged constitutional violations.

14

V.

Order

For the reasons discussed herein,

The court ORDERS that the motion of JPS to dismiss be, and is hereby, granted, and that plaintiffs' claims against JPS be, and are hereby, dismissed.

The court further ORDERS that the motion of Duane and Acclaim be, and is hereby, granted in part and the claims against Duane arising out of failure to comply with TADA and all claims against Acclaim be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of the claims against JPS and Acclaim.

SIGNED November 18, 2021.

JOHN McBRYDE
Senior United States District Judge

15