Case 4:20-cv-00072-A   Document 75   Filed 03/11/22   Page 1 of 18   PageID 715

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 11 2022
CLERK, U.S. DISTRICT COURT
By_____
  Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BERMAN DE PAZ GONZALEZ AND § 
EMERITA MARTINEZ-TORRES, §
INDIVIDUALLY AND AS HEIRS, §
AND ON BEHALF OF THE ESTATE OF §
BERMAN DE PAZ-MARTINEZ, §
 §
　　　　Plaintiffs, §
 §
VS. § NO. 4:20-CV-072-A
 §
THERESA M. DUANE, M.D., ET AL., §
 §
　　　　Defendants. §

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant Theresa M. Duane, M.D., ("Duane") for summary judgment based on qualified immunity. The court, having considered the motion, the response of plaintiffs, Berman DePaz Gonzalez and Emerita Martinez-Torres, individually, the reply, the record, and applicable authorities, finds that the motion should be denied.

I.

Background

As recited in the court's November 18, 2021 memorandum opinion and order, Doc.[1] 58, plaintiffs allege in their amended

---

[1] The "Doc.___" reference is to the number of the item on the docket in this action.

complaint that:

On March 29, 2018, Berman DePaz Gonzalez ("Berman"), suffered a very serious brain injury, was in a coma in grave condition, and was kept alive by a ventilator at John Peter Smith Hospital. Doc. 46, ¶¶ 13, 16, 18. Plaintiffs were informed through an interpreter that their son's prognosis was extremely poor. Id. ¶ 18. The family came to pray for a miracle and almost immediately Berman started making movements for the first time. Id. On March 31, 2018, the family spent 45 minutes with a chaplain, telling him that they believed in miracles, saw Berman make movements in response to prayer, absolutely did not wish to stop treatment, and needed more time. Id. ¶ 19. Staff told the family that Berman could stay for seven days, at which time he would be released to go home with the necessary medical equipment to keep him alive. Id. ¶ 20. At 6:00 a.m. the next morning, Duane appeared with an interpreter and told Berman's father that the doctors had gotten together and decided to take Berman off life support. Id. ¶ 21. Duane disconnected Berman and his father watched him die. Id. ¶ 22.

The court has dismissed the claims against Tarrant County Hospital District ("JPS"), owner of the hospital where Berman died, and Acclaim Physician Group, Inc. ("Acclaim"), which

2

employed Duane. Docs. 58 & 59. The only remaining claims are against Duane under 42 U.S.C. § 1983.

II.

Ground of the Motion

Duane contends that she is entitled to qualified immunity as to plaintiffs' § 1983 claims.

III.

Applicable Standard of Review

A. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the

3

nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could
> not, as a whole, lead a rational trier of fact to find
> for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the

---

[2] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

4

non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 247-48. Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984). Nor can the nonmovant rely on conclusory allegations unsupported by concrete and particular facts. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995).

B. Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 577 U.S. 7, 11 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice

6

is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. . . .

502 U.S. at 229. Further, that the defendant himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his

7

entitlement to qualified immunity. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. White v. Pauly, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. Id. at 552. Thus, the failure to identify a case where an defendant acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. Id.; Surratt v McClarin, 851 F.3d 389, 392 (5th Cir. 2017).

IV.

Undisputed Facts

The record establishes the following undisputed facts:

JPS is a county hospital district created under Chapter 281 of the Texas Health and Safety Code. Doc. 68 at Appx. 25. JPS owns and operates John Peter Smith Hospital and other health

8

care facilities to furnish medical and hospital care to indigent residents of Tarrant County, Texas. Id. at Appx. 13. Acclaim is a nonprofit corporation organized under 501(c)(3) of the Internal Revenue Code and laws of the State of Texas, including but not limited to Tex. Health & Safety Code § 281.0565. Id. at Appx. 25. Its sole member is JPS. Acclaim operates solely for the benefit of, and to support, promote, and advance the mission of, JPS. Id. It does so through a professional services agreement, the preamble of which provides in pertinent part that JPS requires "the provision of professional medical services" and "professional administration and management" and that:

> [Acclaim] employs and/or contracts with physicians and other health care providers who are qualified to provide professional medical services to patients and to provide administrative and management services . . .
>
> [Acclaim] has developed and maintains the infrastructure, expertise and resources necessary to provide certain medical and administrative services and related activities . . .

Id. at Appx. 13.

At the time of Berman's death, Duane was employed by Acclaim to work in the department of surgery and surgical specialties at John Peter Smith Hospital. Id. at Appx. 25.

9

V.

Analysis

The parties agree that whether Duane can assert qualified immunity depends upon (1) general principles of tort immunities and defenses applicable at common law around the time of the enactment of § 1983 in 1871, and (2) the purposes served by granting immunity. Sanchez v. Oliver, 995 F.3d 461, 466 (5th Cir. 2021); Perniciaro v. Lea, 901 F.3d 241, 251 (5th Cir. 2018). The purposes served by granting qualified immunity are: (1) preventing unwarranted timidity in the exercise of official duties; (2) ensuring that highly skilled and qualified candidates are not deterred from public service by the threat of liability; and (3) protecting public employees from all of the distraction that litigation entails. Sanchez, 995 F.3d at 467 (quoting Perniciaro, 901 F.3d at 253).

In this case, Duane simply argues that she is entitled to qualified immunity because the facts here are more like those in Perniciaro and Filarsky v. Delia, 566 U.S. 377 (2012), than Sanchez and Richardson v. McKnight, 521 U.S. 399 (1997). The whole argument takes little more than two pages of her brief. Doc. 67 at 4-6. Plaintiffs object that Duane has not provided allegations, evidence or argument necessary to make an evaluation of the first requirement. Indeed, the Fifth Circuit

10

has cautioned that the court must not "shirk [its] responsibility to conduct a robust historical inquiry." Sanchez, 995 F.3d at 468. None has been provided here.

In Perniciaro, the Fifth Circuit held that two psychiatrists employed by Tulane University who provided services at a state-run facility owned and operated by the Louisiana Department of Health were entitled to assert the defense of qualified immunity. The psychiatrists, like the attorney in Filarsky, were retained to work alongside government employees who were entitled to qualified immunity. The court emphasized that they were private individuals serving the state on a part-time basis. 901 F.3d at 252.

In Sanchez, the Fifth Circuit held that an employee of an employer systematically organized to perform the major administrative task of providing mental-health care at state facilities was not entitled to qualified immunity. 955 F.3d 461. The court distinguished Filarsky in which an individual was retained as an individual to perform discrete government tasks with direct supervision by the government. Id. at 468. And, citing cases from other circuits finding no compelling history of immunity for private medical providers working for a state,[3]

---

[3] See, e.g., McCullum v. Tepe, 693 F.3d 696 (6th Cir. 2012)(conducting a thorough discussion of the history of immunity of doctors and finding that there was no special immunity for a doctor working for the state).

11

the court determined that "the key to untangling whether there is a tradition of immunity applicable to private citizens in [the position of the defendant] is the nature of the claims against her." Id. at 469. Further, it noted that there appears to have been no tradition of immunity for a doctor who acted recklessly. Id. Therefore, it found that there was not a sufficient historical tradition of immunity at common law to support making the defense of qualified immunity available to a mental healthcare provider employed by a large, for-profit company contracted by a government entity to provide care in a correctional setting.[4] Id.

This case lies somewhere in between Perniciaro and Sanchez. Duane has provided enough evidence to show that she was privately employed by an entity created to operate John Peter Smith Hospital and its related facilities. It appears that Acclaim operates with limited direct government supervision. For example, providers must be pre-approved by JPS, but approval shall not be unreasonably withheld. Doc. 68 at Appx. 16, ¶ 3.1.3. A material breach of the agreement allows JPS to immediately and in its sole discretion terminate the agreement and replace Acclaim. Id. at Appx. 17, ¶ 3.3. The contract has a

---

[4] Again, although the holding of Sanchez pertained to a doctor employed by large for-profit company retained to provide care in a correctional setting, the discussion of the history of immunity for doctors is not so limited.

term, although the definition of the term has not been included in the evidence before the court. Id. at Appx. 21, ¶ 4.1.

Duane's opening brief has no discussion of the second part of the applicable test to determine whether qualified immunity can be asserted. Doc. 67. The discussion in the reply comes too late and fails to cite any case with facts similar to this one.[5] Doc. 74. In any event, Duane has not provided evidence to support any contention that the requirements are met. The most important purpose of qualified immunity is avoiding unwarranted timidity by those carrying out the government's work. Sanchez, 995 F.3d at 469. The second purpose is to ensure that talented candidates are not deterred from public service. Id. at 470. And, the third purpose is to protect public employees from frequent lawsuits that might distract them from their official duties. Id. at 471-72. The court can only surmise that the portions of the contract that have not been provided include provisions requiring Acclaim to procure insurance and to insure and/or indemnify its employees. They may also provide information about pay and benefits to employees and other matters bearing on these factors. The certificate of formation of Acclaim reflects that Duane was an initial member of the

---

[5]The parties do not say whether they have found or even searched for cases involving entities like Acclaim. Nor do they engage in much of a discussion of cases involving public hospitals.

board of directors and as such was entitled to indemnification and limitation of liability. Doc. 68, Ex. A. It might well be that these factors would counsel against allowing qualified immunity to be asserted. See, e.g., Gasca v. Lucio, No. 1:20-CV-160, 2021 WL 4198405, at *7-8 (S.D. Tex. May 24, 2021).

In sum, if the detailed inquiry discussed above is now required, Duane simply has not provided sufficient evidence to show that she is entitled to assert the defense of qualified immunity. The court is not persuaded however, despite the parties' agreement, that Duane bears such a burden. To the court's knowledge, there has never been a question but that a government employee is entitled to assert qualified immunity. See, e.g., Harlow, 457 U.S. at 818. The employee simply has to claim qualified immunity and establish that her acts were undertaken within the scope of her authority. United States v. Burzynski Cancer Research Inst., 819 F.2d 1301, 1310 (5th Cir. 1987); Lion Bustos v. Wilson, 834 F.2d 504, 507 (5th Cir. 1987).

A hospital district is a governmental entity and members of its staff are government actors. Bustillos v. El Paso Cnty. Hosp. Dist., 891 F.3d 214, 220 (5th Cir. 2018); Hill Scott v. Dallas Cnty. Hosp. Dist., No. 3:08-CV-600-O, 2010 WL 71038, at *6 (N.D. Tex. Jan. 7, 2010). Acclaim is a governmental unit under Texas law. Tex. Health & Safety Code § 281.0565(c). Duane

is an employee of Acclaim. Doc. 68 at Appx. 25, ¶ 7. Thus, Duane is arguably a government employee.[6] If so, Duane can assert qualified immunity if she can establish that her acts pertinent to this case were undertaken within the scope of her discretionary authority. Cronen v. Tex. Dep't of Human Servs., 977 F.2d 934, 939 (5th Cir. 1992). As plaintiffs point out, Duane fails to address the matter in her motion. Doc. 72 at 4-6.

An official acts within her discretionary authority when she performs non-ministerial acts within the boundaries of her official capacity. Cherry Knoll, L.L.C. v. Jones, 922 F.3d 309, 318 (5th Cir. 2019). Non-ministerial acts are those "not pursuant to specific orders, or spelled out in minute detail beforehand," but requiring "careful deliberation and the exercise of [her] judgment." Tamez v. City of San Marcos, 118 F.3d 1085, 1092 (5th Cir. 1997).

Generally, medical professionals exercise considerable judgment in their treatment of patients. Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex. 1994). However, government service imposes constraints and responsibilities on such providers that private practitioners do not have. For example, government doctors have less latitude in choosing patients. Id. at 10. And, in this

---

[6] The parties do not discuss whether being an employee of Acclaim makes Duane a government employee. The court notes that JPS earlier represented to the court that Duane was an independent contractor. Doc. 19 at 11-12. Plaintiffs did not dispute that status. Doc. 27 at 9-10.

15

case, Acclaim (and therefore Duane) was required to furnish professional medical services to all patients of JPS. Doc. 68 at Appx. 13, ¶ 1.1. In other words, services could not be refused to such a patient. But that is what Duane is alleged to have done—not only refused to treat but took away treatment from a JPS patient. Arguably, that was not a decision she had the authority to make.[7] In any event, Duane has not submitted any evidence to explain why she acted as she did, much less to establish that she was acting within her discretion. Giving plaintiffs the benefit of the doubt, there could have been any number of reasons aside from the exercise of medical discretion that caused Duane to act as she did.

Finally, even if Duane had established that she is entitled to invoke the defense of qualified immunity, the court agrees with plaintiffs that, if the facts are as alleged, Duane violated a clearly established right to due process before removing life support from Berman. Supreme Court precedent at the time made clear that end of life decisions are subject to due process. See, e.g., Cruzan by Cruzan v. Director, Mo. Dep't of Health, 497 U.S. 261 (1990). "Historically, this guarantee of due process has been applied to *deliberate* decisions of

---

[7] This strikes the court as a different argument than the one made in cases like Cronen, where the Fifth Circuit rejected the argument that the defendants acted outside their discretionary authority because they failed to follow or correctly apply federal food stamp regulations.

government officials to deprive a person of life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 331 (1986)(citing cases). That the due process clause was intended to secure the individual from the arbitrary exercise of the powers of government is a "traditional and common-sense notion." Id. And, it has long been recognized that an essential principle of due process is that a deprivation of life, liberty, or property must be preceded by notice and an opportunity for hearing appropriate to the nature of the case. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). Although plaintiffs have not pointed to a case establishing the exact notice and opportunity required here, it cannot be disputed that some notice and opportunity to be heard were required yet none was given. The court is satisfied that every reasonable physician would have known that he or she could not walk into a patient's room and pull the plug without any prior notice as is alleged to have happened here.

VI.

Order

For the reasons discussed herein, the court ORDERS that

Duane's motion for summary judgment be, and is hereby, denied.

SIGNED March 11, 2022.

_____
JOHN McBRYDE
Senior United States District Judge