U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 23 2022

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BERMAN DE PAZ GONZALEZ AND | § | |
| EMERITA MARTINEZ-TORRES, | § | |
| INDIVIDUALLY AND AS HEIRS, | § | |
| AND ON BEHALF OF THE ESTATE OF | § | |
| BERMAN DE PAZ-MARTINEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:20-CV-072-A |
| | § | |
| THERESA M. DUANE, M.D., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant Theresa M. Duane, M.D. ("Duane"), for summary judgment. The court, having considered the motion, the response of plaintiffs, Berman DePaz Gonzalez and Emerita Martinez-Torres, the reply, the record, and applicable authorities, finds that the motion should be granted.

I.

## Background

Plaintiffs summarize their case as follows:

1.    This case is about euthanasia.
2.    More specifically, the Defendants intentionally euthanized Plaintiff's[sic] son, by physically removing a breathing tube from his body without his consent or the consent of his parents.
3.    Defendants thereby violated: (1) the rights to life and liberty inherent in the United States Constitution; and (2) rights to life, liberty, and property created by Texas law.

> 4.    Defendants did so without providing due process
> sufficient to satisfy the Fourteenth Amendment of the
> United States Constitution, or even providing the
> lesser (constitutionally insufficient) process
> required by state law.
> 5.    Therefore, Plaintiff [sic] hereby assert claims
> under 42 U.S.C. § 1983, as set forth below.

Doc.[1] 46 at 2. As facts, plaintiffs allege in their amended

complaint that:

On March 29, 2018, Berman DePaz-Martinez ("Berman"),

suffered a very serious brain injury, was in a coma in grave

condition, and was kept alive by a ventilator at John Peter

Smith Hospital. Doc. 46, ¶¶ 13, 16, 18. Plaintiffs were informed

through an interpreter that their son's prognosis was extremely

poor. Id. ¶ 18. The family came to pray for a miracle and almost

immediately Berman started making movements for the first time.

Id. On March 31, 2018, the family spent 45 minutes with a

chaplain, telling him that they believed in miracles, saw Berman

make movements in response to prayer, absolutely did not wish to

stop treatment, and needed more time. Id. ¶ 19. Staff told the

family that Berman could stay for seven days, at which time he

would be released to go home with the necessary medical

equipment to keep him alive. Id. ¶ 20. At 6:00 a.m. the next

morning, Duane appeared with an interpreter and told Berman's

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

father that the doctors had gotten together and decided to take Berman off life support. Id. ¶ 21. Duane disconnected Berman with the full expectation that extubation would result in Berman's death. Id. ¶ 36.

The court has dismissed the claims against Tarrant County Hospital District ("JPS"), owner of the hospital where Berman died, and Acclaim Physician Group, Inc. ("Acclaim"), which employed Duane. Docs. 58 & 59. Plaintiffs have dismissed their claims brought on behalf of Berman's estate. Docs. 9 & 11. The only remaining claims are those of Plaintiffs against Duane under 42 U.S.C. § 1983.

II.

Grounds of the Motion

Duane asserts four grounds in support of her motion for summary judgment. First, there is no genuine issue of material fact that the decision to remove Berman from the ventilator did not require notice and an opportunity to be heard. Second, there is no genuine issue of material fact that Berman's injuries were not survivable. Third, there is insufficient evidence to show that Duane's conduct was motivated by evil intent or reckless or callous indifference. And, fourth, Duane is entitled to qualified immunity. Doc. 79.

III.

Facts Established by Undisputed Summary Judgment Evidence

Duane graduated magna cum laude from State University of New York at Buffalo School of Medicine in 1995. Doc. 81 at 84. She completed seven years of post-doctoral residencies and an additional fellowship in trauma and critical care. Id. In 2002, she became board certified by the American Board of Surgery in Surgical Critical Care. Id. She received her Texas medical license in 2014, which has remained in good standing. Id. She is also certified in advanced cardiac life support and advanced trauma life support. Id. at 85. She has lectured and written extensively in the area of critical care and trauma and has conducted extensive clinical research in that field. Id.

Extubation is the final step of liberating a patient from mechanical ventilation so that the patient can breathe on his own. Doc. 81 at 85. As a general rule, the longer a patient is intubated, the more the patient is at risk for seriously adverse outcomes. Id. Generally, a patient is gradually weaned off mechanical ventilation until the patient can maintain sufficient ventilation and oxygenation. Id. The patient should be able to protect against aspiration during spontaneous breathing and should be able to maintain a clear airway. Id. Several commonly used indicators for the propriety of extubation include whether

4

a patient's airway is patent, the presence of a cough/gag
reflex, and the strength of the patient's cough (measured as
cough peak expiratory flow rate), increased sputum volume, and
impaired neurologic function. Id. Universally accepted threshold
levels of cough strength, consciousness, and suctioning
frequency have not been established. Id. Not all factors must be
present for extubation to be indicated. Id. Whether extubation
is proper is decided on a case by case basis. Id. at 86. One
factor that is highly correlated with successful extubation is
the "rapid shallow breathing index" ("RSBI"), which is described
as the ratio of respiratory rate to tidal volume. Id. A
threshold of less than 105 breaths/min/L is associated with
weaning success, whereas a greater RSBI is highly predictive of
weaning failure. Id. at 86, 101. Duane's research on the use of
RSBI in determining whether to extubate patients has been
published in peer-reviewed journals. Id. at 86. RSBI is widely
accepted and used as a critically important factor in
determining whether extubation is appropriate. Id.

Berman was admitted to JPS early on March 29, 2018, after
jumping from a moving vehicle that was going approximately 45
miles per hour. He had severe injuries and was completely
unresponsive. Doc. 81 at 57-62, 86. He was assessed by a number
of physicians and surgeons, one of whom assessed his prognosis

as grim. Id. at 60, 87. All of the doctors who examined Berman recognized that his injuries were non-survivable. Id. at 10, 48, 56, 60, 87-94. A nurse practitioner noted that the plan was to wean Berman off oxygen and the ventilator settings as tolerated. Id. at 37, 55, 88. Duane agreed. Id. at 88.

On March 30, 2018, an acute care nurse met with Berman's family for a physician and pastoral care conference facilitated by an interpreter. Doc. 81 at 31, 92. The nurse explained that Berman had suffered a traumatic brain injury and that his prognosis was poor. Id. The family agreed to categorize Berman as "DNR-A" meaning that his heart would not be restarted and he would not be re-intubated if he went into cardio pulmonary arrest.[2] Id. at 93. The nurse met with them again the next day to answer questions and discuss comfort measures. Berman's status as DNR-A did not change. Id. at 19-20, 94.

On April 1, 2018, Berman met the parameters for extubation. His RSBI was 67. Doc. 81 at 95. His cough and gag reflex were intact. Id. He exhibited spontaneous respirations with ventilator support and clearer breathing sounds in his lungs. Id. at 14-15. Duane believed that extubation was clinically indicated, that it would reduce the likelihood of complications

---

[2] At the time of their depositions, plaintiffs did not recall having made such a decision. Doc. 81 at 122-23, 133-34.

arising from extended intubation, and that it was reasonably likely that Berman would continue breathing on his own. Id. at 17, 95. The nurse agreed with that assessment. Id. Duane conveyed her beliefs to Berman's father, who understood Duane to say that with or without the tube, Berman would remain the same. Id. at 95, 125-26. Duane did not believe it was necessary to get permission to extubate Berman. Id. at 96. Her expert agreed that it was not standard to ask permission to extubate a patient who meets clinical extubation parameters. Id. at 104-05. Further, extubation of Berman was clearly standard protocol and not intended as a purposeful end of life measure. Id. Duane's decision was an appropriate exercise of her medical decision-making and discretion. Id. at 105.

Duane ordered Berman's extubation. Doc. 81 at 65, 96. Berman became hypoxic and expired quickly. Id. at 19, 96. The general surgeon pronounced Berman dead. Id. He noted that Berman had made extubation parameters the day before. Id. at 12. The family requested an autopsy. Id. The Tarrant County Medical Examiner concluded that Berman's cause of death was blunt force trauma of head due to fall from moving motor vehicle. Id. at 78.

IV.

Applicable Standard of Review

A.   Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides
that the court shall grant summary judgment on a claim or
defense if there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law. Fed.
R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247 (1986). The movant bears the initial burden of pointing out
to the court that there is no genuine dispute as to any material
fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).
The movant can discharge this burden by pointing out the absence
of evidence supporting one or more essential elements of the
nonmoving party's claim, "since a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial." Id. at 323.Once
the movant has carried its burden under Rule 56(a), the
nonmoving party must identify evidence in the record that
creates a genuine dispute as to each of the challenged elements
of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A
party asserting that a fact . . . is genuinely disputed must
support the assertion by . . . citing to particular parts of
materials in the record . . . ."). If the evidence identified

8

could not lead a rational trier of fact to find in favor of the
nonmoving party as to each essential element of the nonmoving
party's case, there is no genuine dispute for trial and summary
judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot.
& Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could
> not, as a whole, lead a rational trier of fact to find
> for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is
the same as the standard for rendering judgment as a matter of
law.[3] Celotex Corp., 477 U.S. at 323. If the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party, there is no genuine issue for trial.
Matsushita, 475 U.S. at 597; see also Mississippi Prot. &
Advocacy Sys., 929 F.2d at 1058.

The mere existence of some alleged factual dispute between
the parties will not defeat an otherwise properly supported
motion for summary judgment. Anderson, 477 U.S. at 247-48.

---

[3]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969)
(en banc), the Fifth Circuit explained the standard to be applied in
determining whether the court should enter judgment on motions for
directed verdict or for judgment notwithstanding the verdict.

9

Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984). Nor can the nonmovant rely on conclusory allegations unsupported by concrete and particular facts. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995).

B.   Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in

light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 577 U.S. 7, 11 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively

reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. . . .

502 U.S. at 229. Further, that the defendant himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994). Although Supreme

Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. White v. Pauly, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. Id. at 552. Thus, the failure to identify a case where a defendant acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. Id.; Surratt v McClarin, 851 F.3d 389, 392 (5th Cir. 2017).

V.

Analysis

A.    Violation of § 1983

As made plain by the amended complaint, plaintiffs' claims are based on the premise that Duane intentionally deprived Berman of life without due process. As they recognize, the guarantee of due process applies to "*deliberate* decisions of government officials to deprive a person of life." Doc. 85 at 5 (quoting the court's March 11, 2022 memorandum opinion and order, Doc. 75 at 16-17 in turn quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). In this case, however, they have not come forward with summary judgment evidence to show that Duane made

13

such a deliberate decision to deprive Berman of life,
consequently violating his right to due process. Rather, they
simply rely on the premise that Duane could not have extubated
Berman without their informed consent.[4] Duane, on the other hand,
has shown by her own testimony and that of her expert that
extubation was medically indicated and appropriate and that
consent was not required based on the facts at hand.
Medical judgments, such as the parameters for extubation of a
patient, are matters beyond the general experience and common
knowledge of laymen. Thus, expert testimony is required. Johnson
v. Arkema, Inc., 685 F.3d 452, 471 (5th Cir. 2012); Selig v.
B.M.W. of N. Am., Inc., 832 S.W.2d 95, 100 (Tex. App.—Houston
[14th Dist.] 1992, no writ). Plaintiffs offer none.

   As for damages, as the Fifth Circuit noted in an earlier
opinion in this action, plaintiffs' ability to recover damages
derives solely from § 1988's incorporation of remedies available
to survivors under the Texas wrongful death and survival
statutes. DePaz v. Duane, 858 F. App'x 734, 737-38 (5th Cir.
2021). See Brazier v. Cherry, 293 F.2d 401, 405 (5th Cir.
1961)(holding that 42 U.S.C. § 1988 incorporates state wrongful
death and survival statutes for those making claims under

---

[4] They simply state as a matter of course, without any supporting authority, that "due process is violated by the very act of a unilateral decision by a physician." Doc. 85 at 16.

§ 1983). Here, only survivor damages are at issue since plaintiffs have dismissed the claims brought on behalf of Berman's estate. Docs. 9 & 11; Doc. 46 at 1 n.1.

To recover survivor damages in Texas under § 1983, plaintiffs must prove that Duane caused Berman's death. Slade v. City of Marshall, 814 F.3d 263, 264-65 (5th Cir. 2016). A "lost chance" of survival is not enough. Id. (citing Kramer v. Lewisville Mem'l Hosp., 858 S.W.2d 397, 404 (Tex. 1993)). That is, the law does not permit a claimant to recover under the survival statute when a medical provider's conduct decreases the patient's chance of survival where preexisting illness or injuries made the patient's chance of survival improbable. Kramer, 858 S.W.2d at 404-07. Here, the summary judgment evidence establishes that Berman's injuries were not survivable. Plaintiffs do not address this ground of the motion.

Punitive damages are available under § 1983 only where the defendant acted with evil motive or intent, or was reckless or callously indifferent to the federally protected rights of others. Smith v. Wade, 461 U.S. 30, 56 (1983). As noted by the case cited by plaintiffs, the latter standard "at a minimum require[s] recklessness in its subjective form." Doc. 85 at 20 (quoting Kohler v. Johnson, 396 F. App'x 158, 162 (5th Cir. 2010)(in turn, quoting Kolstad v. Am Dental Ass'n, 527 U.S. 526,

15

536 (1999)). Plaintiffs have not cited any probative summary judgment evidence to establish a genuine fact issue as to Duane's subjective motive. Rather, as Berman's father understood Duane's explanation, Berman would remain the same with or without the tube. Doc. 81 at 124-25. Speculation by anonymous sources and unauthenticated materials do not meet the test. York v. Toone, No. 6:17-00076-ADA-JCM, 2018 WL 8619800, at *1 (W.D. Tex. Dec. 10, 2018). See Francois v. General Health Sys., 459 F. Supp. 3d 710, 725-27 (M.D. La. 2020)(nurses' notes without sufficient foundation and not timely designated as expert opinion excluded).

Finally, although the parties do not address the issue, there seems to be uncertainty whether plaintiffs, in any event, would be able to recover punitive damages. See General Chem. Corp. v. De La Lastra, 852 S.W.2d 916, 924 (Tex. 1993), and Hofer v. Lavender, 679 S.W.2d 470, 476 (Tex. 1984). See also Scoggins v. Southwestern Elec. Serv. Co., 434 S.W.2d 376 (Tex. App.—Tyler 1968, writ ref'd n.r.e.). As noted, the estate claims have been dismissed. In addition, under Texas law, exemplary damages are not recoverable absent actual damages. Nabours v. Longview Savs. & Loan Ass'n, 700 S.W.2d 901, 904 (Tex. 1985). Without causation, plaintiffs are not able to recover actual damages.

16

B.   Qualified Immunity[5]

As noted in the court's earlier memorandum opinion and order, Doc. 75 at 10, whether Duane can assert qualified immunity depends upon (1) general principles of tort immunities and defenses applicable at common law around the time of the enactment of § 1983 in 1871, and (2) the purposes served by granting immunity. Sanchez v. Oliver, 995 F.3d 461, 466 (5th Cir. 2021); Perniciaro v. Lea, 901 F.3d 241, 251 (5th Cir. 2018). The purposes served by granting qualified immunity are: (1) preventing unwarranted timidity in the exercise of official duties; (2) ensuring that highly skilled and qualified candidates are not deterred from public service by the threat of liability; and (3) protecting public employees from all of the distraction that litigation entails. Sanchez, 995 F.3d at 467 (quoting Perniciaro, 901 F.3d at 253).

Having reviewed pertinent legal authorities, the court is unable to conclude that there was a common law tradition of immunity for doctors working for the government at the time of the enactment of § 1983. The Supreme Court indicated in dicta that "apparently" the law provided "a kind of immunity for certain private defendants, such as doctors or lawyers who

---

[5] For the reasons discussed, supra, plaintiffs have not raised genuine fact issues as to a violation of a clearly established right or as to damages. The court nevertheless includes a discussion of qualified immunity, which is a separate and dispositive reason for granting summary judgment.

performed services at the behest of the sovereign." <u>Richardson v. McKnight</u>, 521 U.S. 399, 407 (1997). However, the case it cites, <u>Tower v. Glover</u>, 467 U.S. 914, 921 (1984), refers only to a lawyer performing government work. The treatise cited, J. Bishop, <u>Commentaries on Non-Contract Law</u>, §§ 704, 710 (1889), simply provides a general discussion of duty of care, not a discussion of government service. Likewise, it does not appear that the Fifth Circuit has closely considered whether such immunity existed at common law. Rather, in <u>Perniciaro</u>, the Court declined to follow authorities of sister circuits finding that there was no firmly rooted tradition of immunity,[6] concluding instead that <u>Filarsky</u> "require[d] a different focus." 901 F.3d at 252, n.9. It then considered the three purposes served by qualified immunity and determined that doctors performing public duties were entitled to assert qualified immunity. 901 F.3d at 253-55.

As this court previously noted, a hospital district is a governmental entity and members of its staff are governmental actors. Doc. 75 at 14 (citing <u>Bustillos v. El Paso Cnty. Hosp. Dist.</u>, 891 F.3d 214, 220 (5th Cir. 2018); <u>Hill Scott v. Dallas</u>

---

[6] <u>Sanchez</u> cites additional sister circuit authorities recounting that no circuit that has examined the issue has uncovered a common law tradition of immunity for doctors working under color of state law. 995 F.3d at 468 (citing <u>Tanner v. McMurray</u>, 989 F.3d 860 (10th Cir. 2021); <u>Estate of Clark v. Walker</u>, 865 F.3d 544 (7th Cir. 2017); <u>McCullum v. Tepe</u>, 693 F.3d 696 (6th Cir. 2012). Although <u>Sanchez</u> refers to the cases as concerning medical providers in a correctional setting, they are not so limited.

18

Cnty. Hosp. Dist., No. 3:08-CV-0600-O, 2010 WL 71038, at *6
(N.D. Tex. Jan. 7, 2010)). Acclaim is a governmental unit under
Texas law. Tex. Health & Safety Code § 281.0565(c). Duane was an
employee of Acclaim at the time of the actions at issue here
and, thus, a government employee.

As for the purposes of qualified immunity, the discussion
in Perniciaro applies. 901 F.3d at 253-55. There is no evidence
that Duane was part of a large private entity subject to
marketplace pressure. Rather, Acclaim was created exclusively to
benefit JPS, advancing its mission to deliver healthcare to the
public. Doc. 81 at App. 159-60. Accordingly, as the court is
bound by Fifth Circuit precedent, Duane is entitled to assert
the defense of qualified immunity.

At the time the court denied Duane's previous motion for
summary judgment, the allegation was that she removed life
support from Berman intending that he would die. The court
agreed with plaintiffs "that, if the facts are as alleged, Duane
violated a clearly established right to due process before
removing life support from Berman." Doc. 75 at 16.[7] At this
point, however, the summary judgment record establishes that the
facts are not as alleged in the amended complaint. Rather, Duane

---

[7] The court recognizes that its statement was probably made at too high a level of generality. See White v. Pauly,
137 S. Ct. 548, 552 (2017)(the established law must not be defined too generally; it must be particularized to the
facts of the case).

has shown that, within her medical discretion, she made the decision to remove unnecessary treatment from Berman, not to end life support, because he met the clinical parameters for extubation and was capable of breathing on his own. Duane reasonably believed this would reduce the risk of complications caused by prolonged intubation. Doc. 81 at App. 95-96.

Only a licensed physician can provide medical care. Doctors Hosp. at Renaissance, Ltd. V. Andrade, 493 S.W.3d 545, 548 (Tex. 2016). Whether particular diagnostic techniques or forms of treatment are indicated is a "classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976); Domino v. Tex. Dep't Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001). Duane has established as a matter of law that her conduct was within the scope of her discretionary authority. Doc. 81 at App. 96, 104-05. The decision to extubate Berman was a treatment decision based on the facts as they existed at the time. Her expert agrees that the decision was a proper one that did not require permission from Berman or the family. Id. at 104. Plaintiffs have not cited to any case involving similar facts establishing that a doctor in Duane's position was required to seek permission to extubate a patient.[8] Nor have they come

---

[8] Plaintiffs have not established the existence of a special custodial or other relationship between Berman and JPS giving rise to a constitutional duty to provide him medical care. See Kinzie v. Dallas Cnty. Hosp. Dist., 106 F. App'x 192, 195 (5th Cir. 2003). Without a special relationship, there was no constitutional duty to protect Berman.

forward with any evidence to show that every reasonable medical doctor would have known that extubation was improper under the circumstances. Duane is entitled to qualified immunity. Mullenix, 577 U.S. at 11; Malley, 475 U.S. at 341.

VI.

Order

The court ORDERS that Duane's motion for summary judgment be, and is hereby, granted, and that plaintiffs take nothing on their claims against Duane.

SIGNED September 23, 2022.

JOHN McBRYDE
Senior United States District Judge

Reynolds v. Parkland Mem'l Hosp., No. 3:12-CV-4579-N-BN, 2012 WL 7153849, at *3 (N.D. Tex. Dec. 28, 2012)(noting that an allegation of deliberate indifference may be sufficient to violate a constitutional duty, but is not sufficient to create a constitutional duty).

21